25CA1848 Peo in Interest of O'Donnell 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1848
Pueblo County District Court No. 25MH30083
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Matthew Joseph O'Donnell,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Matthew Joseph O'Donnell, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him. We affirm.

## I.    Background

¶ 2    O'Donnell was committed to the hospital after being found incompetent to proceed in his criminal case. He was diagnosed with psychosis, not otherwise specified, and presented with symptoms that included auditory hallucinations, paranoia, racing thoughts, impulsivity, and agitation. After O'Donnell jumped over a couch and punched a peer in the face, the hospital administered emergency medication.

¶ 3    At the request of O'Donnell's treating physician, Dr. Hareesh Pillai, the People filed a petition to involuntarily medicate O'Donnell with risperidone (also known as Risperdal) and haloperidol (also known as Haldol). The district court held an evidentiary hearing, at which Dr. Pillai and O'Donnell testified. After hearing the evidence, the court found that the People had established all four elements for the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and granted the petition.

1

## II.    Applicable Law and Standard of Review

¶ 4    A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.[1]  *Id.*

¶ 5    Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that she can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a *different* purpose," including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181-82.

district court's factual findings if they have record support and review its legal conclusions de novo. *Id.*

¶ 6     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### III.    Analysis

¶ 7     O'Donnell contends only that the evidence was insufficient to prove the fourth *Medina* element. We disagree.

¶ 8     In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 9    After considering the evidence, the district court determined that Dr. Pillai had testified "credibly and persuasively" and "adopt[ed] the opinions expressed by the doctor." In contrast, the court determined that O'Donnell was not credible, but "even with his credibility issues," it still found that he had bona fide and legitimate reasons for refusing medication. The court based its decision, in part, on O'Donnell's testimony that he experienced vomiting, depression, tiredness, and problems going to the bathroom. The court also relied on O'Donnell's testimony that he was "supposed to be taking home remedies as a Christian."

¶ 10    Nevertheless, the district court found that these bona fide and legitimate interests were outweighed by the state's legitimate interest in preserving O'Donnell's life and health and protecting the safety of others in the institution. In particular, the court relied on (1) evidence that, while on medication, O'Donnell was "less irritable" and displayed "less aggression on the unit"; and (2) Dr. Pillai's opinion that, without the medication, there would be a "re-emergence" of those symptoms.

¶ 11    The record supports the district court's findings. Dr. Pillai testified that O'Donnell did not believe that he had a mental illness

or that he needed medication to control his behavior. Therefore, Dr. Pillai believed that O'Donnell's rationale for refusing medication was "based off his limited insight" into his mental illness. Still, Dr. Pillai said that, even if O'Donnell had legitimate reasons to refuse medications, the need for medication still outweighed any risk. As Dr. Pillai explained, when medicated, O'Donnell's condition improved, he was removed from "assault precautions," he experienced fewer hallucinations, and he exhibited less irritability and aggression on the unit.

¶ 12    Dr. Pillai also opined that O'Donnell was likely to cause harm to himself and others in the hospital if left untreated. In support, Dr. Pillai pointed to the incident in which O'Donnell jumped over a couch and punched a peer in the face. Dr. Pillai said that this incident, which occurred before O'Donnell started taking medication, appeared to be related to O'Donnell's "underlying psychiatric condition" and required staff to restrain and seclude him. Dr. Pillai said that, if O'Donnell stopped taking the medications, he would "deteriorate" and start exhibiting the same symptoms of agitation, delusions, paranoia, and hallucinations that he presented with when he was admitted to the hospital.

¶ 13 On appeal, O'Donnell recounts the evidence supporting the district court's finding that he had a bona fide and legitimate reason for refusing medication. But O'Donnell does not challenge any of the evidence establishing that his prognosis without treatment was so unfavorable that his preference against medication had to yield to the state's interest in preserving his life and health and protecting the safety of those in the hospital. The district court weighed this evidence and determined that O'Donnell's preference had to yield to the state's interests. We cannot reweigh the evidence to reach a different result. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57 (noting that, if ample evidence supports the decision, a reviewing court cannot substitute its judgment for that of the district court).

¶ 14 Therefore, viewing the evidence in the light most favorable to the People, we conclude that there was sufficient evidence that O'Donnell's personal preference to refuse medication had to yield to the state's legitimate interest to protect his health and to protect others in the hospital. *See id.*; *see also R.K.L.*, ¶ 13 ("The testimony of the physician seeking to administer treatment may be sufficient by itself to satisfy" the *Medina* elements.).

6

## IV. Disposition

¶ 15    The order is affirmed.

JUDGE FOX and JUDGE BROWN concur.